THEOPHELIA G. TOWNSEND, Respondent, *v.* OLIVER B. WHITNEY, Appellant.

The decree of a surrogate for the payment of money by an administrator is not merged by docketing the same in the office of the county clerk.

After the decree is docketed the person in whose favor it was docketed has two remedies for the enforcement of payment of the moneys due thereon, one by attachment against the administrator in surrogate's court, and another by execution based upon the docket; the two remedies are not inconsistent but concurrent or cumulative, and may both be pursued until the decree has been complied with.

Such a decree is not merged in a judgment subsequently obtained by the person to whom the money is directed to be paid, against the administrator and his sureties upon the administrator's bond.

Upon payment of the judgment by one of the sureties he becomes subrogated to the decree, and has the right to have the same assigned to himself, or to some other person designated by him ; and, upon such assignment, may enforce the decree by attachment against the administrator.

Where the assignment is to a person designated by the surety, the assignee becomes a party to the decree, the whole legal title thereto is vested in him, and he can invoke every remedy for its enforcement.

(Argued November 26, 1878; decided December 10, 1878.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, reversing an order

made by the surrogate of Ulster county denying an application on the part of plaintiff for an attachment against defendant for failure to pay over moneys as required by a decree of said surrogate. (Reported below, 15 Hun, 93.)

The facts appear sufficiently in the opinion.

*John J. Linson,* for appellant. The plaintiff having elected to follow the remedy on contract waived the tort and cannot maintain this action. (*Brown* v. *Littlefield,* 1 Wend., 398; 11 id., 467; *Morris* v. *Rexford,* 18 N. Y., 552; *Kinney* v. *Kiernan,* 2 Lans., 492; *Suprs. Liv. Co.* v. *White,* 30 Barb., 72.) The decrees of the surrogate were merged in and extinguished by the judgments obtained upon them. (*Clark* v. *Rowling,* 3 N. Y., 227; *Craft* v. *Merrill,* 14 id., 456; *Andrews* v. *Smith,* 9 Wend., 53; *McGuinty* v. *Herrick,* 5 id., 240; *Purdy* v. *Doyle,* 1 Paige, 558.) The assignment of the judgment to the petitioner operated as a satisfaction. (*Hodgson* v. *Shaw,* 3 M. & K., 183, 190, 194; *Copis* v. *Middleton,* 1 T. & R., 224, 280; 1 Story's Eq. Jur., § 499 *b, c ;* *Ont. Bk.* v. *Walker,* 1 Hill, 652; *Bk. of Salina* v. *Abbott,* 3 Den., 181; *Corey* v. *White,* 3 Barb., 12; *Kelsey* v. *Bradbury,* 21 id., 531; *Marsh* v. *Benedict,* 14 Hun, 317; *Morley* v. *Stevens,* 47 How., 228; *Harbeck* v. *Vanderbilt,* 20 N. Y., 395; *Shumway* v. *Cooley,* 9 Hun, 131; *Booth* v. *F. and M. Bk.,* 11 id., 258; *Adams* v. *Drake,* 11 Cush., 504; *Holmes* v. *Day,* 108 Mass., 563; *Hull* v. *Sherwood,* 59 Mo., 172; *Carpenter* v. *Stilwell,* 1 Kern., 61; *Goodyear* v. *Watson,* 14 Barb., 481; *Alden* v. *Clark,* 11 How., 209; *Bangs* v. *Strong,* 4 N. Y., 315.) The petitioner was not entitled to the relief demanded because her proceedings were not in conformity with the requirements of the statute. (3 R. S., chap. 8, title 13, § 19; 1 Crary's Spec. Proc. [3d ed.], 198–200; 4 Wait's Pr., 187; *Bank* v. *Schermerhorn,* 9 Paige, 372; *In re Smithurst,* 2 Sandf., 724.)

*J. Newton Fiero,* for respondent. The docketing of the decree did not merge it in the judgment entered thereon,

or prevent the surrogate from exercising his statutory powers for its enforcement. (Laws 1837, chap. 460, §§ §§ 64, 65; 4 Edmunds' Stats., 498; *Sherwood* v. *Judd*, 3 Bradf., 422; 2 R. S., 221, § 6, subd. 4; *Day* v. *Leal*, 14 J. R., 404; *Suprs. Liv. Co.* v. *White*, 30 Barb., 72; *Baker* v. *Martin*, 3 Barb., 634, 641; *Munford* v. *Stoker*, 1 Cow., 178; *Bates* v. *Lyon*, 7 Paige, 86; *Millard* v. *Whitaker*, 5 Hill, 408; *Parsons* v. *Travis*, 2 Duer, 662; *Clapp* v. *Mesrole*, 38 Barb., 665; *Clark* v. *Rowling*, 3 N. Y., 216, 229; *Sheldon* v. *Edwards*, 35 id., 289.) The docketing of the decree did not prevent a prosecution of the bond. (4 Edmunds'. Stat., 498, §§ 63, 64; Laws 1837, chap. 460; 2 R. S., 110, § 19; id., 221, § 6, subd. 4; *People* v. *Guild*, 4 Den., 551; *McCartie* v. *Orphan Asylum*, 9 Cow., 507; *Clapp* v. *Meserole*, 38 Barb., 661, 664; 1 Keyes, 281; *Frear's Case*, 15 Abb., 350; 1 Tuck., 63.) The payment by plaintiff of the distributive shares did not extinguish Whitney's liability, and the assignment to her is valid and entitles her to all the remedies the original parties might have had. (*Bangs* v. *Strong*, 4 N. Y., 315, 323; ' *Wescott* v. *King*, 14 Barb., 32; *Goodyear* v. *Watson*, id., 481; *Alden* v. *Tifft*, 11 How., 210; *Marsh* v. *Benedict*, 6 N. Y. Wkly. Dig., 369.)

Earl, J. The defendant and Solomon A. Ferris were appointed by the surrogate of Ulster county administrators of the estate of John J. Ferris, deceased ; and upon such appointment, they gave the bond required by law, signed by them and by William H. Townsend and another who is now dead, as sureties. Subsequently the administrators accounted before the surrogate, and he made a decree by which he ordered them to pay certain sums to Mrs. Love, Mrs. Ferris, and Mrs. Elting respectively as their distributive shares of the estate. These sums not having been paid, subsequently a certificate of the decree was obtained from the surrogate, and the decree was docketed in the clerk's office of Ulster county, under the provisions of chapter 460 of the Laws of 1837, as amended by chapter 104 of the

Laws of 1844. The decree did not become merged by docketing the same. The docket did not make it a judgment, but simply made it a lien upon real estate for the amounts shown in the certificate; and executions could thereafter be issued to enforce the same, as upon judgments recovered in the county court. After the decree was thus docketed, the persons in whose favor it was docketed had two remedies to enforce payment of the money due them; one by attachment against the administrators in the surrogate's court, and another by executions based upon the docket. The two remedies are not inconsistent, but concurrent or cumulative; and they may both be pursued until the decree has been complied with.

Executions were issued and returned unsatisfied, and then, upon application, the surrogate assigned the bond to the persons in whose favor the decree was made, for the purpose of prosecution by them. (§ 65, chap. 460 of the Laws of 1837.)

Mrs. Love, Mrs. Ferris, and Mrs. Elting then commenced actions upon the bond against the administrators and Townsend, the surviving surety, and recovered each a judgment for the amount due her. Then Townsend, the surety, with his own money paid the amounts of the judgments to Mrss. Love, Ferris, and Elting, and procured them to assign the judgments and also the decree of the surrogate to the present respondent, his wife. This he did for the purpose of enabling her to proceed by attachment against the administrators to compel payment by them. She then applied to the surrogate for an attachment against the administrators for not paying the money as directed by the decree, and he denied the remedy on the ground that the payment of the judgments by the surety, in the manner above mentioned, discharged both the decree and the judgments. But his decision was upon appeal reversed by the Supreme Court, and the administrator, Whitney, has appealed to this court.

The appellant now claims that the decree was merged in the judgments subsequently obtained upon the bond, and

hence that an attachment to enforce it is unauthorized. This claim is not well founded. The decree was the principal debt, and the bond was a collateral security for such debt. The judgments were not recovered upon the decree, but upon the bond. It is too clear to need argument that a judgment upon a collateral security does not merge the principal debt, and does not suspend, so long as it remains unpaid, any remedy upon the principal debt. (*Day* v. *Leal*, 14 J. R., 405; *Baker* v. *Martin*, 3 Barb., 634; *Supervisors of Livingston Co.* v. *White*, 30 id., 72.) The parties entitled to payment under the decree had the right to pursue their remedies upon the decree and also upon the bond, until they obtained satisfaction.

It is also contended, on behalf of the appellant, that the payment of the judgments by Townsend, in the manner above mentioned, satisfied both the decree and the judgments. It is probably true that the case is not altered by the assignment to Mrs. Townsend. She had no separate estate, and no means. Her husband furnished the money to pay the judgments, and the assignments to her were merely formal, to enable him, in her name, to enforce the decree. This case may therefore be treated as if the surety had paid the judgments, and then taken an assignment of them, and also of the decree, for the purpose of enforcing them against the principal debtors. (1 Story's Eq. Jur., sec. 499, *b*.)

Where one of two joint debtors, both of whom are principals, pays a joint judgment, the judgment becomes extinguished, whatever may have been the intention of the parties to the transaction; and it is not in their power, by any arrangement between them, to keep the judgment on foot for the benefit of the party making the payment. (*Harbeck* v. *Vanderbilt*, 20 N. Y., 395.) The remedy of the party thus paying is by an action against his co-debtor for contribution.

But a different rule prevails where one of the joint judgment debtors is a surety upon the obligation put into judgment. Under the civil law, a surety paying the joint obli-

gation is entitled not only to be subrogated to all the securities which the creditor holds for the payment of the debt; but he is entitled to be substituted, as to the very debt itself, to the creditor, by way of cession or assignment. It treats the transaction between the surety and the creditor, according to the presumed intention of the parties, to be not so much a payment, as a sale of the debt. (1 Story's Eq. Jur., sec. 500; 1 Domat, bk. 3, tit. 1, sec. 6, art. 1.) But this broad rule of equity has not been fully adopted in England. There, it seems to be the general rule, that a payment of a joint obligation by a surety extinguishes the obligation both at law and in equity, and that it cannot be kept on foot for his benefit. But a surety thus paying is entitled to all the collateral securities held by the creditor for the payment of the debt: (*Copis* v. *Middleton*, 1 Turn. & Russ., 224; *Reed* v. *Norris*, 2 Milne & Craig, 361; *Hodgson* v. *Shaw*, 3 Mylne & Keene, 183.) It is there held that the surety cannot be subrogated to the very obligation paid, because it does not survive payment, and there is nothing left to which he can be subrogated; and that he can be subrogated only as to such securities and remedies as survive the payment of the principal obligation. But it has not always been easy to define the cases in which subrogation could be had; and the English authorities are not all consistent. It would be useless to criticize and attempt to reconcile or distinguish them.

The general American doctrine in favor of sureties is more liberal than that of the English courts; and I will refer to only a few of the cases decided in this State. In *Cuyler* v. *Ensworth*, (6 Paige, 32), four persons became jointly liable in the official bond of a county treasurer, who afterwards misapplied the funds of the county and died insolvent, and a judgment was thereupon recovered against the four sureties in the bond, jointly, and three of them afterwards paid the whole amount of the debt and costs, and an execution was issued upon the judgment for their benefit, on which the sheriff was directed to levy one-fourth of the amount of the judgment of the property of their co-surety,

which execution was subsequently returned unsatisfied; and it was held that the three sureties who had paid the whole debt and costs, could file a creditor's bill in their own names against their co-surety to obtain satisfaction of his rateable proportion of the judgment, out of his equitable interests and choses in action which could not be reached by the execution at law. The broad doctrine is laid down that "the surety, by the mere payment of the debt, and without any actual assignment from the creditor is, in equity, subrogated to all the rights and remedies of the creditor, for the recovery of his debt against the principal debtor or his property, or against the co-sureties or their property, to the extent of what they are equitably bound to contribute." Although the judgment was paid, it was held that the sureties who paid it were subrogated to all the remedies which the creditor had to enforce payment; and yet under most of the English authorities, the judgment by such payment would have been held to be extinguished, so that there could have been no subrogation in reference thereto. In *Speiglemyer* v. *Crawford*, (6 Paige, 254), there was a creditor's bill prosecuted on behalf of a surety against the principal, founded upon a decree against the principal and surety for the payment of money; and the chancellor said: "If the surety had paid the decree, he would, in equity, have been entitled to an assignment of all the rights and remedies of the complainant to compel payment and satisfaction of the debt and costs by the principal debtor. He would also, in that case, have been permitted to file a creditor's bill against the defendant in his own name, founded on such original decree, to obtain satisfaction out of her property which could not be reached by the execution on such decree."

If A. executes to B. a bond for the payment of money which is guaranteed by C., and at the same time executes a mortgage upon real estate to secure the payment of the same sum, and C. is compelled to pay the bond, he is entitled to be subrogated to the mortgage and enforce it for his indemnity; (*Mathews* v. *Aikin*, 1 Comst., 595); and yet the pay-

ment of the bond also pays the mortgage, and the mortgage in the hands of the mortgagee is absolutely as much extinguished as the bond. In equity however the mortgage is kept in life, just as it was before payment, for the benefit of the surety. In England, the surety, in such a case, is allowed to be subrogated to the mortgage, on the theory that the mortgagee's estate was not divested by payment, and could only be divested by a reconveyance to the mortgagor, and hence that the estate survived payment, and was not extinguished thereby : (*Copis* v. *Middleton*, *supra*). Here subrogation is not upon that theory, as the mortgagee takes no estate in the land, and the lien of the mortgage becomes extinguished by payment. But the subrogation is based upon the broad doctrine of equity, that the surety upon payment is entitled to all the remedies and securities which the creditor held before payment. In *Lewis* v. *Palmer*, (28 N. Y., 271), WRIGHT, J., laid down the rule thus broadly : " It is a well settled principle, that a surety who pays a debt for his principal is entitled to be put in the place of the creditor, and to all the means which the creditor possessed to enforce payment against the principal debtor." In *Clason* v. *Morris*, (10 J. R., 525,) SPENCER, J., said : " That a surety who pays a debt for his principal, has a right to be put in the place of the creditor, and to avail himself of every means the creditor had to enforce payment against the principal debtor, is a principle which I had supposed incontestable." In *Goodyear* v. *Watson*, (14 Barb., 481), the rule of the civil law was adopted, and a very learned court held that where a surety paid a judgment recovered against himself and the principal debtor, and took an assignment thereof for his own benefit, such payment did not extinguish the judgment ; but that after the death of the principal, payment of it, according to its priority of date out of the assets of the principal debtor, might be decreed by the surrogate ; and a similar decision was made in the case of *Alden* v. *Clark*, (11 How. Pr., 209).

These citations are sufficient to show what the rule is in

this State; and I will now proceed to apply it to this case.

It is not necessary to hold, in this case, as many authorities in this country, as well as the civil law, would warrant, that the judgments paid by Townsend survived, so as to be the subject of subrogation. If the judgments were completely extinguished by the payment, it is because they were joint judgments against the principals and the surety. But the creditors had two remedies; one upon the judgments, and another upon the decree which could be enforced by attachments; and these two may be treated as securities for the payment of the same debt. The surety was not a party to the decree, and that could not be enforced against him. The creditors had independent remedies upon the decree; and when the surety paid the judgments, he took the place of the creditors as to such decree, and was subrogated thereto. It matters not that payment of the judgments also paid the decree. Payment of a bond also discharges the mortgage collateral thereto, and yet, as shown above, the mortgage, for the purpose of subrogation, survives.

I am, therefore, of opinion that upon the payment made by the surety, he became subrogated to this decree, and he had the right to have the same assigned to himself or to some other person designated by him.

It is also said that the assignee, Mrs. Townsend, cannot enforce this decree in her own name by attachment. This is a mere technical objection, and not one of substance. The surety could, if necessary, have used the names of the original creditors in the enforcement of the decree. Such is always the right of a surety in such cases, if his interests require it. But by this assignment the whole legal title to the decree was vested in the assignee. She is entitled to the moneys due thereon. The duty, which was before due from the administrators to the original creditors, is now due to her, to the same extent. She has become a party to the decree, and can invoke every remedy for its enforcement. Every sale of a judgment, decree, or other obligation carries

· with it every remedy which the law gives the seller to enforce payment.   The remedy attaches to and inheres in the obligation, and does not pertain to the person of the owner.

Some objection is made to the regularity of the proceeding before the surrogate.   It is sufficient to say that no such objection was made before the surrogate, and that by the order of the Supreme Court the proceeding is remitted to .the surrogate ; and if he did not before, he can, upon the further hearing of the matter, conform to the statute.   It is therefore not necessary to examine this objection.

The order of the Supreme Court must be affirmed, with costs.

All concur.

Order affirmed.